TOWN OF EAST LYME *v.* DAVID WADDINGTON ET AL.
(2529)

DUPONT, C.P.J., HULL and BORDEN, Js.

Argued March 5—decision released June 18, 1985

*Edward B. O'Connell,* with whom, on the brief, was *Laura K. Ray,* for the appellant (plaintiff).

*Gilbert Shasha,* for the appellees (defendants).

BORDEN, J. The plaintiff town brought this action for an injunction to restrain the defendants from serving beer at a restaurant they own in the town. Two other

proceedings which shape the configuration of the case preceded this action, as more fully set forth below. The trial court denied the request for an injunction. The plaintiff appealed from that judgment. We find error.

The facts are not disputed. The defendants' restaurant is located in a commercially zoned district of the town. The restaurant is within 1500 feet of the Morton House, an establishment which includes sleeping accomodations and an eating place which serves alcoholic beverages, pursuant to a permit issued by the state.

The defendant Patricia Waddington, as co-owner with the defendant David Waddington of the restaurant in question, applied in 1983 to the liquor control commission of the department of liquor control for a permit to sell beer at the restaurant.[1] The application required certification by the local zoning authority that the zoning ordinances allow the sale of alcoholic liquor under the type of permit for which application was being made. The defendants obtained this certification from the town zoning enforcement officer. The zoning commission disagreed with the officer's certification, believing that the zoning regulations prohibited the sale of liquor at these premises. The zoning commission appealed the officer's action to the zoning board of appeals, naming the officer as the sole defendant in the appeal. David Waddington spoke at the public hearing on that appeal, but was not made a party to the appeal. The board found that zoning regulations §§ 13.18.1 through 13.18.6 proscribed the issuance of a liquor permit for the defendants' restaurant because it was within

---

[1] Although Patricia Waddington was the only applicant, she co-owned the restaurant with David Waddington. The decision on the liquor permit application affected them both as owners of the restaurant. They are both named as defendants to this action and, for convenience and because of the practical effect of the issuance of the liquor permit, we refer to the application plurally, as the defendants' application.

1500 feet of the Morton House, and sustained the commission's appeal on April 26, 1983. No notice of this decision, other than the formal notice published in the legal advertisements section of the New London Day, was given to the defendants. The decision of the board was not appealed to the Superior Court. The officer sent a copy of the board's decision to the department of liquor control to aid in its decision on the defendants' liquor permit application.

Meanwhile, on April 12, 1983, the department held a hearing on the defendants' application, at which the officer testified as to his interpretation of the local zoning ordinances and notified the department that his certification of the defendants' application was being challenged before the zoning board of appeals. The department approved the application on May 12, 1983. In its decision, the department acknowledged the board's decision but declined to deny the application on the basis of that decision, noting the ambiguity of the regulations in question and the department's desire to act consistently with its decisions in the past where the officer's interpretation of the same regulations had not been challenged. The department issued the permit with the caveat that the defendants had to surrender the permit if the town or the board successfully appealed its issuance. Notice of this decision was sent to the defendants, the officer and the board, but not to the town. No appeal was taken from the decision of the department. The defendants commenced to serve beer at their restaurant pursuant to the permit.

The town instituted this action, seeking to enjoin the serving of beer at the defendants' restaurant. See General Statutes § 8-12. Prior to the institution of the action, the applicable zoning regulations were amended. The trial court denied the injunctive relief, finding that the language of the zoning regulation as it existed at the time of the application was too ambiguous to inter-

pret, and that the granting of the permit by the department of liquor control was conclusive and binding on all the parties. The plaintiff appealed.

I

Before reaching the heart of the issues on appeal, we first deal with preliminary matters raised by the parties regarding the effect of the administrative actions which preceded this suit. The plaintiff essentially makes two arguments: (1) that the failure of the defendants to appeal the board's decision collaterally estops them from defending on a basis contrary to that decision; and (2) that they are, therefore, bound by the decision of the board. These arguments have no merit.

" 'Collateral estoppel is that aspect of the doctrine of res judicata which serves to estop the relitigation by parties and their privies of any right, fact or legal matter which is put in issue and has been once determined by a valid and final judgment of a court of competent jurisdiction.' *State* v. *Wilson,* 180 Conn. 481, 485, 429 A.2d 931 (1981). The party or his privy against whom collateral estoppel is asserted, therefore, must have been given a full and fair opportunity to litigate in a prior proceeding the issue sought to be precluded in the subsequent proceeding. *Brockett* v. *Jensen,* 154 Conn. 328, 338, 225 A.2d 190 (1966)." *P. X. Restaurant, Inc.* v. *Windsor,* 189 Conn. 153, 161–62, 454 A.2d 1258 (1983). The doctrine also applies to issues litigated in administrative proceedings. *Wade's Dairy, Inc.* v. *Fairfield,* 181 Conn. 556, 559 n.7, 436 A.2d 24 (1980). The defendants in this case were not named as parties in the appeal to the board. The parties to that appeal were the zoning commission and the officer. Since the defendants were not privies to either of these parties, their interests were neither protected nor litigated in that proceeding which challenged the certification by

the officer. The doctrine of collateral estoppel, therefore, does not preclude them from raising these issues now.

Nor are the defendants bound by the board's interpretation of the zoning regulations, even though they failed to appeal from the board's decision. The defendants were not required to appeal from that decision because they had already obtained the relief sought. Within the time for appeal, the department of liquor control issued them their permit. Having obtained from the department the relief they sought, there was no reason for them to appeal from the board's decision. "To do so would have availed them nothing. 'The law does not require the doing of a useless thing.' *Corsino* v. *Grover,* [148 Conn. 299, 308, 170 A.2d 267 (1961)]." *Greenwich* v. *Liquor Control Commission,* 191 Conn. 528, 542, 469 A.2d 382 (1983).

The defendants similarly argue that the decision of the department of liquor control is binding on the plaintiff because the plaintiff had the right to appeal from the issuance of the liquor permit and did not. Therefore, the defendants claim that collateral estoppel bars the plaintiff from challenging the department's decision in this action. This argument is also without merit.

The plaintiff was not a party to the department's proceeding. Although the issuance of the license by the department was conditioned on the failure of the plaintiff or the board successfully to appeal the department's decision, the plaintiff was never given notice of the department's decision. The mere naming of the plaintiff in the decision is not enough to hold the plaintiff to that decision. Not being a party to the department's proceeding, the plaintiff was not collaterally estopped by it. Indeed, the plaintiff was not entitled to take a direct appeal from the department's decision. General Statutes § 30-60 ("any applicant for a permit . . . or

any permittee whose permit is revoked or suspended . . . or any ten residents who have filed a remonstrance pursuant to the provisions of § 30-39 and who are aggrieved . . . may appeal . . . ."); *Bendell* v. *Johnson,* 153 Conn. 48, 50, 212 A.2d 199 (1965) ("There is no direct appeal allowed from the action by the commission in granting, suspending or revoking permits except by applicants and permittees."); *Newington* v. *Mazzoccoli,* 133 Conn. 146, 153, 48 A.2d 729 (1946). The plaintiff could, however, properly seek injunctive relief from the department's decision which, in the plaintiff's view, violated local zoning regulations; General Statutes § 8-12; *Newington* v. *Mazzoccoli,* supra, 156; as the plaintiff did in this case.

Since the defendants were not bound by the board's interpretation of the zoning regulations, and the plaintiff was not bound by the department's interpretation, the trial court was required to make a conclusive determination of the legal situation in which the parties found themselves. In doing so, however, the court erred.

## II

The regulation controlling at the time of the defendants' application was § 13.18.1, which provided in pertinent part: "[N]o building or premises shall be used, erected or altered which is arranged, intended or designed to be used as . . . [a] Restaurant, Cafe, Grill, or Tavern serving Alcoholic Liquor or Alcoholic Beverages (as defined in the Liquor Control Act) if any part of said building or premises is situated on any part of a lot within 1500′ radius in any direction of any lot upon which is located a building or premises used for the purposes of a Restaurant, Cafe, Grill, or Tavern serving alcoholic liquor or alcoholic beverages." The issue which the parties ultimately placed before the court was the proper interpretation of this language. More precisely,

the major issue presented by this language was whether the parenthetical statement, "as defined in the Liquor Control Act," modified only the phrase, "Alcoholic Liquor or Alcoholic Beverages," modified only the phrase, "Restaurant, Cafe, Grill, or Tavern," or modified both.

The regulation was subsequently amended, however, to provide in pertinent part: "[N]o building or premises shall be used, erected or altered which is arranged, intended or designed to be used . . . [f]or the sale of alcoholic liquor or alcoholic beverages for consumption on the premises if any part of said building or premises is situated on any part of a lot within [a] 1500 feet radius in any direction of any lot upon which is located a building or premises used for the purposes of selling alcoholic liquor or alcoholic beverages for consumption on the premises." There is no reference to the Liquor Control Act in the new regulation and the ambiguous language has been deleted.

There is no dispute that the Morton House sells liquor for consumption on the premises and is controlled by the regulation as amended. Nor is there a dispute that the defendants' restaurant, which sells liquor for consumption on the premises, is within 1500 feet of the Morton House. Under the current regulation, therefore, the defendants are clearly prohibited from selling liquor in their establishment.

With certain exceptions not applicable here, "the zoning law or regulation in effect at the time of the decision of a court is controlling as opposed to that in effect when the proceedings were instituted or when the administrative agency entered its decision upon the application." (Footnote omitted.) *McCallum* v. *Inland Wetlands Commission,* 196 Conn. 218, 223, 492 A.2d 508 (1985); *Johnson* v. *Zoning Board of Appeals,* 2 Conn. App. 24, 27, 475 A.2d 339 (1984). Zoning dis-

putes should not be settled on the basis of regulations which no longer exist. *Johnson* v. *Zoning Board of Appeals,* supra, 26. The policy behind this is a practical one: to do substantial justice while avoiding the necessity of protracted retrials which will ultimately have the same result. *McCallum* v. *Inland Wetlands Commission,* supra, 224.

We must apply these principles to the facts of this case, although the parties urge us to interpret the language of the former regulation. We cannot obstruct the plan developed for the community in question by implementing out-of-date regulations. "Since the original regulations are no longer of any force, our determination of their effect and validity would be futile . . . ." Id., 223. The current regulation is not ambiguous in effecting its purpose of controlling the distance between liquor outlets such as those involved here. Under its terms, the defendants are plainly prohibited from selling liquor in their restaurant.

We, therefore, need not reach the issue of the ambiguity of the preexisting regulation, as did the trial court.[2] Nor is it necessary for us to decide whether the trial court correctly concluded that the department's issuance of the permit was binding on the parties, since that issuance was based on the department's interpretation of the now defunct regulation.

---

[2] We note, however, that the trial court erred in concluding that the pre-existing regulation was "too ambiguous to make a determination of what it means." Construction of zoning regulations is a regular function of the courts. See, e.g., *Pascale* v. *Board of Zoning Appeals,* 150 Conn. 113, 116, 186 A.2d 377 (1962). The full panoply of principles of statutory construction are available to aid in the construction of local ordinances. *Manchester* v. *Manchester Police Union,* 3 Conn. App. 1, 6, 484 A.2d 455 (1984); see *Shelby Mutual Ins. Co.* v. *Della Ghelfa,* 3 Conn. App. 432, 489 A.2d 398 (1985). While this regulation may have been less than a model of artful drafting, it was not so murky that the principles of interpretation could not make sense of it. See *Hutchison* v. *Board of Zoning Appeals,* 140 Conn. 381, 385, 100 A.2d 839 (1953).

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the plaintiff.

In this opinion the other judges concurred.